# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MEGHAN SARAC, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) No. 07 C 1132 |
|    v. | ) |
| | ) HONORABLE DAVID H. COAR |
| MINNESOTA LIFE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
|        Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Meghan Sarac (the "Plaintiff") filed an action against Minnesota Life Insurance Company (the "Defendant') seeking to recover life insurance benefits as the sole beneficiary under a life insurance and accidental death policy in addition to penalties under 215 Ill. Comp. Stat. §5/154.6 for the alleged bad faith handling of her claim. There has been no jury demand in this case. Before the Court now are motions for summary judgment filed by both parties. For the reasons stated below, Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part and Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

## I.  UNDISPUTED STATEMENT OF FACTS[1]

The Plaintiff's husband, Steven Sarac ("Sarac"), was a forensic scientist employed by the Illinois State Police at the time of his demise. Through his employment, Sarac held a State of

---

[1] The following undisputed facts were gathered from the same exhibits submitted by both parties to their respective Rule 56.1 Statements of Fact.

Illinois Group Insurance Plan (the "Policy"), which entitled his designated beneficiary to benefits upon his accidental death or dismemberment caused by an accidental injury. The Policy stated in relevant part:

> **What does accidental death or dismemberment by accidental injury mean?**
>
> Accidental death or dismemberment by accidental injury as used in this supplement meant that your death or dismemberment results, directly and independently of disease or bodily infirmity, *from an accidental injury which is unexpected and unforeseen…*
>
> **When will the accidental death and dismemberment benefit be payable?**
>
> We will pay the accidental death and dismemberment benefit upon receipt at our home office of written proof satisfactory to us that you died or suffered dismemberment *as a result of an accidental injury…*

(Emphasis added.)

On March 3, 2006, Sarac was driving an automobile northbound on Interstate 94 just south of Dempster Street in Skokie, Illinois. In attempting to pass a truck, Sarac lost control of his vehicle, and collided with the rear of the trailer of the truck. The momentum of his vehicle, combined with the truck driver's application of brakes caused Sarac's vehicle to become wedged underneath the rear of the semi-trailer. A medical examiner found that as a result of the collision, Sarac suffered severe craniocervical injuries from which he died. The medical examiner described the manner of Sarac's death as an accident. Toxicology analyses were performed that revealed Sarac had a vitreous humor alcohol level of 203 mg/dl and a blood

alcohol level of 510 mg/dl, which correspond to .203 BAC and .51 BAC, respectively.[2] The legal limit in the state of Illinois is .08 BAC. 625 Ill. Comp. Stat. 5/11-501(a)(1) (West 1998).

Under the terms of the Policy, Sarac's designated beneficiary was entitled to $372,000 in accidental death benefits. Plaintiff is the sole beneficiary under Sarac's Policy. Plaintiff made a claim to Defendant for the benefits under the terms of the Policy. The Defendant denied the Plaintiff accidental death benefits in a letter dated December 27, 2006, in which Defendant explained that Sarac's death was not an "accidental injury." Defendant cited two reasons for not characterizing Sarac's death as an "accidental injury": the first because Sarac was found to have a vitreous BAC of .203, more than twice the legal limit to operate a vehicle in Illinois, and the second because he was a forensic scientist, he was assumed to know the risks and dangers of drunk driving. Therefore, in the Defendant's opinion, Sarac's death did not result from unforeseen circumstances. Defendant admits that Sarac's death was not a suicide.

Plaintiff filed suit against Defendant alleging that it breached the Policy and owes her benefits in an amount of $372,000. Plaintiff also alleges that Defendant violated Illinois law by failing to provide the benefits under the Policy for the reasons stated in the letter and engaged in bad faith handling of her claim. The basis for Plaintiff's bad faith claim is that, according to her, the law in Illinois is sufficiently clear that Sarac's death was unintended and unforeseen and therefore, Defendant had no good faith basis upon which to deny her claim.

---

[2] Mg/dl means milligrams per deciliter and is a standard measure of blood alcohol levels, which are commonly expressed as blood alcohol content (BAC). http://www.emedicinehealth.com/alcohol_intoxication/page2_em.htm. *See also* http://www.cyberdriveillinois.com/departments/drivers/traffic_safety/08laws.html (last visited December 4, 2007).

## II. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment will be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable finder of fact to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it can affect the outcome of the case under the applicable substantive law. Id. When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Schuster v. Lucent Tech. Inc., 327 F.3d 569, 573 (7th Cir. 2003).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. Pro. 56(e); Celotex, 477 U.S. at 324. To successfully oppose the motion, the non-movant must designate these facts in affidavits, depositions, answers to interrogatories, or admissions; the non-movant cannot rest on the pleadings alone. Celotex, 477 U.S. at 324.

## III. DISCUSSION

### A. Accidental Injury under the Policy

The only question at issue in determining whether the Plaintiff is entitled to the accidental death benefits under the terms of her husband's Policy with the Defendant is whether Sarac's death occurred as the result of an "accidental injury," as defined in the Policy. The

Policy explains that an accidental injury is an injury that is *both* unexpected and unforeseen. Illinois law governs this action, so the Court begins there to determine whether Sarac's death was unexpected and unforeseen.

In Taylor v. John Hancock Mutual Life Insurance Company, the Illinois supreme court instructed that "accidental means" are indistinguishable from "accidental results," and consequently, something is "accidental" for insurance coverage purposes, when it "happens by chance or fortuitously, without intention or design, and... is unexpected, unusual and unforeseen." 11 Ill.2d 227, 230; 142 N.E.2d 5, 6 (1957). In Taylor, the decedent died in a fire caused by his own hand while committing arson. 11 Ill.2d at 230; 142 N.E.2d at 6. The court held the decedent's death occurred "solely through accidental means" as that term had been construed by Illinois courts because although the decedent "intended to burn down the building," he "obviously did not intend to start the fire when he did." 11 Ill.2d at 230; 142 N.E.2d at 6. Thus, a death can be deemed accidental for insurance coverage purposes where a decedent embarked upon voluntary and reckless criminal conduct which caused his death, as long as he did not intend to cause himself injury or death.

In an insightful pre-Taylor case, an Illinois appellate court reversed a trial court's judgment in favor of a defendant insurance company in an action brought by a plaintiff-beneficiary to recover accidental death benefits. Rodgers v. Reserve Life Insurance Co., 8 Ill.App.2d 542; 132 N.E.2d 692 (1956). In Rodgers, the decedent drove an automobile on a rural road at night at a speed of 100 miles per hour. Ill.App.2d at 543; 132 N.E.2d at 693. As the decedent attempted to negotiate an oncoming curve in the road, he lost control of the vehicle, crashed and died. Ill.App.2d at 543; 132 N.E.2d at 693. Evidence showed that the decedent

even verbally affirmed to his passengers immediately before the crash that he was going too fast to go around the oncoming curve in the road. Ill.App.2d at 544; 132 N.E.2d at 693. The defendant insurance company argued that the decedent's death was the result of his reckless disregard for his own safety and not an accident. Ill.App.2d at 545; 132 N.E.2d at 694. Despite recognizing that "the decedent consciously incurred a known hazard in attempting to negotiate the curve in the highway at the high rate of speed" and that he "clearly failed to exercise judgment, was careless, reckless, perhaps foolhardy," the court nonetheless held that it "did not follow that he *intended to destroy himself* or endanger the lives of his passengers." Ill.App.2d at 553; 132 N.E.2d at 697 (emphasis added). Therefore, the Rodgers court held that his death was not "the rational, natural and probable result of his conduct." Ill.App.2d at 553; 132 N.E.2d at 697. Thus, his death was deemed "accidental" as a matter of law. Although neither the Taylor and Rodgers court explicitly stated that death or serious bodily injury must have been intended to be properly deemed an accident under the respective policies at issue, both courts clearly focused upon the intent of the decedent to cause his own death or serious injury as a determining factor of whether the cause of death was an accident.

In another relevant case, an Illinois appellate court examined whether an insured alcoholic's demise occurred "solely through accidental means" for purposes of collecting accidental death benefits under a life insurance policy when his death was caused by the consumption of a lethal amount of alcohol. Russell v. Metro. Life Ins. Co., 108 Ill. App.3d 417, 418; 439 N.E.2d 89, 90 (1982). The court examined the relevant case law including Taylor and stated that the rule in Illinois is that an accidental injury is one that was not foreseeable, i.e. *not* the "natural and probable consequence" of the insured's conduct. 108 Ill. App.3d at 422; 439

N.E.2d at 92. The Russell court held that even a death caused by the alcoholic victim's voluntary consumption of a lethal amount of alcohol was accidental and not foreseeable. The court did not create a bright line rule for determining when an injury will be found to be the natural and probable consequence of the insured's conduct. Instead, the court engaged in a comparative analysis; comparing the foreseeability of death or serious bodily harm attributable to the decedent's use of alcohol to the foreseeabilities of death or serious bodily harm attributable to the decedent from other cases. However, the Russell court interpreted Taylor as setting a high threshold of likelihood as necessary for even raising an issue of fact as to whether death or serious bodily harm was foreseeable. 108 Ill. App.3d at 423; 439 N.E.2d at 93.

In another post-Taylor case, an Illinois appellate court held that the death of an insured resulting from an overdose of morphine was an "accident" for purposes of the accidental death policy as a matter of law. Marsh v. Metro. Life Ins. Co., 70 Ill.App.3d 790; 388 N.E.2d 1121 (1979). The Marsh court explained that "[t]he test of foreseeability in interpreting coverage under an insurance policy is not aided by the definition of foreseeability set forth in either the tort or the criminal cases." 70 Ill.App.3d at 792; 388 N.E.2d at 1123. In Marsh, the decedent voluntarily injected himself with morphine and the parties conceded that although the overdose was self-administered, death was unintended. 70 Ill.App.3d at 791; 388 N.E.2d at 1123. The court held that the insured's death from an overdose was not the *foreseeable* result of his intentional use of the drug. 70 Ill.App.3d at 791; 388 N.E.2d at 1123.

Two cases from this Court dealt with similar issues stemming from similar insurance policy language. In the first case, Schroeder v. Minnesota Life Insurance Company, the Court concluded that an insured's death from injuries sustained in an automobile collision after

suffering a seizure was not foreseeable and therefore, not "accidental" under the policy. 2007 WL 1169706 (N.D.Ill.). In the second case, DeLaTorre v. Minnesota Life Insurance Company, the court concluded that an insured's death from injuries sustained in an automobile collision was not foreseeable and therefore, "accidental" under the policy, even though the decedent's blood tested positive for alcohol at .23 mg/dl and for morphine at .293 mg/dl. 2005 WL 2338809 (N.D.Ill.). Defendant argues that the DeLaTorre Court incorrectly focused on whether the insured intended to die and cites this supposed error as reason not to rely on that case as instructive to the instant action. However, as discussed above, the Taylor, Rodgers, and Marsh courts unambiguously focused upon the intent of the insured to cause his own death or serious injury as a determining factor of whether the cause of death was an accident.

Defendant cites to Cozzie v. Metropolitan Life Insurance Company, a Seventh Circuit case, in support of its position. 140 F.3d 1104 (1998). In that case, the Court held that an ERISA plan administrator's decision to deny accidental death benefits on the grounds that the insured's death resulted from drunk driving and not an accident was not arbitrary and capricious. 140 F.3d at 1111. Contrary to the Defendant's contentions, the Cozzie court did not hold that it was foreseeable, as a matter of law, that an intoxicated individual would suffer a fatal injury if he drove. In fact, that Court explicitly wrote: "We do not mean to suggest that MetLife could sustain a determination that all deaths that are causally related to the ingestion of alcohol, even in violation of law, could reasonably be construed as not accidental." 140 F.3d at 1110. But even if the Cozzie opinion stood for what Defendant incorrectly asserts it did, the DeLaTorre court was correct in disregarding it in light of the overwhelming Illinois law. See 2005 WL 2338809 at *4, n.3. That is so because, first, the Cozzie court applied federal common law, not Illinois

insurance law.  Second, as demonstrated by the analyses utilized by the Taylor, Rodgers and Marsh courts, objective foreseeability is but one prong of the test for an "accidental death" for insurance coverage purposes, the other is the subjective intent of the insured that his conduct will result in death or serious bodily harm.

Defendant also argues that this Court should find that any death attributable to drunk driving is not an accidental death as a matter of law.  In support of this, the Defendant urges this Court to consider that several states and even the federal common law have recognized the inherent reckless of drunk driving in both the criminal law and ERISA group plan contexts, respectively.  However, neither the criminal law of Illinois or any other state nor the federal common law is applicable to this case.  First, since this action came before this Court under the diversity jurisdiction granted under 28 U.S.C. § 1332, this Court may only apply Illinois law. Davis v. G.N. Mortg. Corp., 396 F.3d 869, 876 (7th Cir. 2005).  Second, Illinois courts do not apply criminal standards of recklessness and foreseeability to the actions of insured decedents when determining whether an "accidental death" has occurred.  Marsh, 70 Ill.App.3d at 792; 388 N.E.2d at 1123.  In adjudicating the instant action, only current Illinois insurance law matters.

Defendant argues further that if this case where before an Illinois court, such a court would take the opportunity to create precedent and conclude that a death resulting from an insured's drunk driving would never be an accidental death under an insurance policy.  It is not within the prudential limits of this Court's jurisdiction to create Illinois state law or even to apply law it presumes Illinois courts would adopt.  Rather this Court is bound to apply Illinois law as it stands today and as explained most recently by Illinois courts.  If the Defendant wishes the result it argues for in this case, perhaps it should change the language in its policies to

expressly provide that an injury or death is not accidental if it results, in whole or in part, from the ingestion of alcohol.

Illinois case law establishes that the Defendant has the burden of demonstrating a factfinder could find that Sarac both expected death or serious bodily injury to occur and that a reasonable person would regard death or serious bodily harm to be the natural and probable consequence from driving drunk. Defendant admits that Sarac did not commit suicide. Moreover, Defendant has not presented any facts that Sarac expected he would die or seriously injure himself if he chose to drive drunk.[3] Thus, Defendant cannot satisfy the first element of an "accidental death" under Illinois law because it cannot demonstrate that Sarac either intended or expected to die or be seriously injured as a result of his decision to drive under the influence of alcohol. Therefore, the Court grants Plaintiff's motion for summary judgment and denies Defendant's motion on the issue of whether Plaintiff is entitled to accidental death benefits under the Policy.

### B. Violation of 215 Ill. Comp. Stat. §§ 5/154.6 and 155

Plaintiff contends that Defendant has engaged in improper claim practices and vexatiously and unreasonably failed to pay her claim for accidental death benefits. Illinois law provides for a court to award statutory damages where it determines that an insurance company's

---

[3] On this point, Defendant argues Sarac should have expected death or serious injury because he was a forensic scientist employed by the Illinois State Police. However, Defendant does not offer any evidence from which a factfinder can draw such a conclusion. Also, it is worth mentioning that Defendant has not submitted any facts other than a police officer's report listing alcohol as a contributing factor to the collision, from which a reasonable factfinder can conclude that the sole cause of the collision was Sarac's alcohol consumption, as opposed to his poor driving skills, knowledge and experience,which were also listed on the report as contributing factors.

failure to pay or delay was vexatious and unreasonable. 215 Ill. Comp. Stat. §5/155. The statute provides in relevant part:

> (1) In any action by or against a company wherein there is in issue the liability of a
> company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts...

Plaintiff also cites 215 Ill.Comp.Stat. §5/154.6, which provides in relevant part:

> Any of the following acts by a company, if committed without just cause and in violation of Section 154.5, constitutes an improper claims practice:
> ...(d) Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;
> (e) Compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them;...
> (h) Refusing to pay claims without conducting a reasonable investigation based on all available information;...

A private cause of action does not exist under section 154.6. <u>American Service Ins. Co. v. Passarelli</u>, 752 N.E.2d 635, 639; 323 Ill.App.3d 587, 590 (2001). Thus, Plaintiff may not maintain a claim against Defendant under 215 Ill. Comp. Stat. §5/154.6. However, she can maintain a claim under section 155. <u>Id</u>. The Illinois supreme court explains that section 155 "provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." <u>Cramer v. Ins. Exch. Agency</u>, 675 N.E.2d 897, 900; 174 Ill.2d 513, 520 (1996). The determination of whether an insurer's conduct is vexatious and unreasonable is within the trial court's discretion. <u>Passarelli</u>, 752 N.E.2d at 639; 323 Ill.App.3d at 591 (2001).

Defendant contends that there is a *bona fide* dispute over coverage in this case. A court will not find an insurer acted unreasonably or vexatiously when there is *bona fide* dispute over coverage. Baxter Int'l., Inc. v. Am. Guar. & Liab. Ins. Co., 861 N.E. 2d 263, 272; 369 Ill. App. 3d 700, 710 (2006). According to Defendant, there is no Illinois law directly on point with the facts of this case and the two Northern District of Illinois cases, DeLaTorre and Schroeder, were either inapplicable or incorrect. The Plaintiff contends that Defendant failed to make a reasonable investigation based on all available information. Defendant's corporate representative who made the determination to deny accidental death benefits, stated that he did not consider Illinois law generally or the cases in which courts have interpreted the foreseeability provisions of the Policy in reaching the decision to deny accidental death benefits, including the DeLaTorre and Schroeder cases. He also stated he did not consider or discuss how the term "unforeseen" has been interpreted under Illinois law nor is he familiar with how Illinois courts have defined the term "unforeseen". According to the Plaintiff, a cursory examination of Illinois case law would have revealed Sarac's death was accidental and not foreseeable and that the basis of Defendant's withholding of accidental death benefits is without merit. Plaintiff also contends that Defendant's failure to consider Illinois law is especially egregious given that its current lead counsel in this case was also counsel in both the DeLaTorre and Schroeder cases.

This Court is of the opinion that "sanctions" under section 155 (as characterized by the Baxter court,) are inappropriate in this case. An appropriate question to answer is whether Defendant possessed a good faith belief that Plaintiff was not entitled to the accidental death benefits under the Policy. First, Defendant is correct that there is no Illinois case holding directly that an insured's death resulting from an automobile accident where the insured was

legally drunk is accidental for insurance coverage purposes. Second, the Defendant is also correct that several other courts from different jurisdictions applying different legal standards have held that sustaining death while driving drunk is not an accident. Third, as for reliance on the DeLaTorre and Schroeder cases as setting precedents, this Court respects the decisions of other district courts with respect to interpretations of law, but it is not bound by them. Therefore, the Defendant was not unreasonable to anticipate this Court could differ from the other courts in their interpretation of Illinois law.

The real issue is whether it was reasonable in light of Illinois case law, for the Defendant to argue that Sarac's death was foreseeable and thus, not accidental. It was reasonable. This Court examined the case law and concluded that objective foreseeability is but one prong of the test for an "accidental death" for insurance coverage purposes, the other prong is the subjective intent of the insured that his conduct will result in death or serious bodily harm, but no other court has explicitly stated as much. Both Rodgers and Russell decisions spoke of foreseeability as the natural and probable results of one's actions in such a way that a less perceptive reader would assume that the foreseeability prong was the end of the analysis. The Schroeder decision focused on foreseeability and did not mention intent. 2007 WL 1169706 at *4-5. The DeLaTorre decision discussed intent, found that the insured lacked it, but then went on to discuss foreseeability as though if one could show foreseeability without intent, one could show the death was accidental. 2005 WL 2338809 at *4. These decisions are undoubtedly the basis for Defendant's position that Sarac, and any other reasonable person, could foresee driving drunk could lead to an automobile accident that would result in death or serious bodily harm, rendering such death or injury not accidental. Thus, this Court does not conclude that Defendant acted

unreasonably in denying Plaintiff benefits based on its belief that Sarac's death did not result from unforeseen circumstances. Therefore, this Court declines to award Plaintiff statutory damages under 215 Ill. Comp. Stat. §5/155 on the basis that Defendant's refusal to pay was vexatious and unreasonable.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgement is **GRANTED** in part and **DENIED** in part. Defendant's motion for summary judgment is **DENIED**. Although Defendant did not request this Court to deny Plaintiff's claim for statutory damages under 215 Ill. Comp. Stat. §5/155 in its motion for summary judgment or in its memorandum in support thereof, it was appropriate for this Court to decide the issue because the Defendant addressed the issue in its reply briefs to Plaintiff's motion for summary judgment. Therefore, Defendant, Minnesota Life Insurance Company, is hereby ordered to pay Plaintiff, Meghan Sarac, $372,000.00 in accidental death benefits plus accrued interest in satisfaction of her claim under the Policy. The parties are orderred to meet and confer in an attepmt to reach agreement as to the appropriate amount of accrued interest. Any such agreement shall be without prejudice to the Defendant's right to appeal the decision as to liability.


Dated: **December 14, 2007**

                                                /s/   David H. Coar
                                                David H. Coar
                                                United States District Court Judge